IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NATHANIEL HULSEY,

    Defendant.                               Case No. 08-cr-30079-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. INTRODUCTION & BACKGROUND

Before the Court is defendant Nathaniel Hulsey's Motion to Quash Arrest and Suppress Evidence and supporting memorandum (Docs. 12 & 19), to which the Government has filed its opposing Response (Doc. 18). Defendant seeks to quash his arrest and suppress evidence based on his argument that the arrest warrant was no longer active. The Court, in analyzing this Motion, accepts all relevant facts as suggested by Defendant, supplementing, as needed, with factual details provided by the Government regarding the mistakes made on the warrants and the procedures surrounding warrant practices which the Defendant does not dispute.

On February 23, 2006, Illinois State Police and three deputy U.S. Marshals forced entry into the residence located at 3101 Belleview in East St. Louis, Illinois. At the time, this residence was leased by Jinni Yates, Defendant's girlfriend.

Due to their intimate relationship, Defendant frequently stayed overnight at Yates' residence. The officers were acting pursuant to an arrest warrant for Defendant, issued on November 10, 2005, for delivering a controlled substance within one thousand feet of a church and within one thousand feet of a school, charged by the St. Clair County State's Attorney (Case No. 05-CF-1829) (Doc. 19, pp. 1-2). This warrant was issued to Agent Steve Meister who was part of the Metropolitan Enforcement Group of Southwestern Illinois ("MEGSI") (Doc. 18, p. 2). On November 21, 2005, Defendant was arrested on this warrant by the New Baden Police Department. Defendant states that after his arrest, the law enforcement database was updated to show the warrant as inactive. Defendant was released on bond on November 23, 2005 (Doc. 19, p. 2).[1] The warrant was removed from NLETS, but MEGSI did not receive notice of Defendant's November 21, 2005 arrest (Doc. 18, p. 2).

On December 12, 2005, MEGSI mistakenly reentered Defendant's November 10, 2005 warrant into the NCIC database, listing it as "active."[2] On February 6, 2006, MEGSI received a notice from the FBI, querying the location of

---

[1] The Government explains that at that time, "the process between the St. Clair County Court and MEGSI for entering warrants into computer databases was handled inconsistently" – at times, the Court would enter the warrant into the database and other times, MEGSI would do it. Regarding Defendant's warrant, it appears the court entered the warrant into the National Law Enforcement Telecommunications System ("NLETS") database shortly after it was issued, but did not immediately enter the warrant into the National Crime Information Center ("NCIC") database. Additionally, the Government asserts that the court entered the warrant into NLETS without informing MEGSI (Doc. 18, p. 2).

[2] Again, the Government explains MEGSI did not know Defendant had already been arrested on the warrant.

certain wanted fugitives who were allegedly receiving Social Security benefits. Members of the Office of the United States Marshal confirmed the existence of an active warrant for Defendant, shown in the NCIC database. Defendant was arrested; incident to his arrest, officers recovered the crack cocaine that is the basis for the indictment in this matter. Also recovered was a .22 caliber Colt revolver, .22 caliber ammunition and shotgun shells and a digital scale. Defendant also made post-arrest incriminating statements to investigators, admitting to possessing the crack cocaine with intent to distribute. That same day, Defendant told MEGSI that he had already been arrested on the warrant back in November, 2005. Officers contacted the Clerk of the Court for St. Clair County and learned, for the first time, that the warrant was no longer active but was mistakenly re-entered into the NCIC database in December, 2005 by MESGI agents. The Government's response states that this error is the only example of a case where a defendant was arrested twice on the same warrant from St. Clair County due to a miscommunication between the Court and MEGSI. Since then, warrants are now consistently entered by MEGSI through the Illinois State Police department. MEGSI is reviewing their current files, but has not yet found any fugitive currently wanted had been previously arrested on the same warrant (Doc. 18, p. 3).

Defendant moves to quash his arrest and to suppress all evidence obtained as a result therefrom, including his post-arrest statements, based on the argument that he was arrested without an active warrant in violation of his Fourth Amendment rights. Further, Defendant argues that because his arrest was

unsupported by probable cause or reasonable suspicion, the exclusionary rule should apply to suppress all evidence obtained and statements made in relation to the arrest. The Government opposes the Motion, arguing that the good faith exception to the exclusionary rule should apply. Although the Court typically sets hearings on motions to suppress, it finds no apparent need for oral argument in this case, as the facts and legal arguments have been briefed by the Parties in a sufficient manner, allowing for the Court to make a ruling herein.

## II. **DISCUSSION**

**A.      Legal Standard**

   **1.      Standing**

The Fourth Amendment protects individuals from "unreasonable searches and seizures" conducted by the government when unsupported by probable cause. **U.S. CONST. amend. IV.** "When evidence is obtained in violation of the Fourth Amendment, the exclusionary rule precludes the use of such evidence and its fruits in criminal proceedings against the victim of the violation." ***United States v. Merritt*, 361 F.3d 1005, 1009 (7th Cir. 2004)**. A defendant can only seek application of the exclusionary rule if his own Fourth Amendment rights have been violated. ***United States v. Salvucci*, 448 U.S. 83, 85 (1980)**. Defendant asserts he has standing to challenge the search and seizure under ***Minnesota v. Olson*, 495 U.S. 91 (1990)**, because as a frequent overnight guest at the searched residence (his girlfriend's house), he had a reasonable expectation of privacy. In its Response, the

Government does not challenge Defendant's assertion of standing.

In ***Olson***, the Supreme Court recognized that Fourth Amendment protection applies to only those who have a "legitimate expectation of privacy in the invaded place." ***Id.* at 95 (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978))**. This expectation should be "one that society is prepared to recognize as reasonable." ***Id.* at 95-6 (internal cites and quotations omitted)**. In sum, ***Olson*** recognized that an overnight houseguest had a legitimate expectation of privacy in his host's home, thus the houseguest can claim protection under the Fourth Amendment. In this case, Defendant was clearly a frequent overnight guest at his girlfriend's residence. The night before he was arrested at his girlfriend's residence, he had stayed overnight there. In accordance with ***Olson*** and absent any legal argument otherwise from the Government, the Court finds Defendant has standing to claim a violation of his Fourth Amendment rights in this case.

### 2. Exclusionary Rule

The Fourth Amendment itself does not expressly preclude use of evidence obtained due to an unlawful search or seizure. ***United States v. Leon*, 468 U.S. 897, 906 (1984)**. Rather, the exclusionary rule is a " 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " ***Id.* (citing *United States v. Calandra*, 414 U.S. 338, 348 (1974))**. In ***Leon***, the Supreme Court discussed the policy considerations in applying the exclusionary rule

in a case where the evidence seized was "in reasonable, good-faith reliance on a search warrant that [was] subsequently held to be defective." *Id.* **at 905**. Ultimately, *Leon* established the "good faith" exception to the exclusionary rule. Admitting its preference for warrants, the Supreme Court identified three factors used in determining that the application of the exclusionary rule was nevertheless inapplicable in *Leon*. *Id.* **at 916-17**. First, the Court recognized that the purpose of the exclusionary rule was "to deter police conduct rather than to punish the errors of judges and magistrates." *Id.* **at 916**. Next, there was no evidence before the Court to show that judges and magistrates were "inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors require[d] application of the extreme sanction of exclusion." *Id.* Lastly, there was no reasonable basis for the Court to believe that excluding the evidence seized pursuant to a warrant would have significant deterrent effect on the issuing judge or magistrate. *Id.* **("[A]s neutral judicial officers, [judges and magistrates] have no stake in the outcome of particular criminal prosecutions . . . we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment . . . .")**. Therefore, the Supreme Court recognized a good faith exception to the application of the exclusionary rule when a search and seizure is conducted without a valid warrant: "where the officer's conduct is objectively reasonable, 'excluding the

evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' " **Id. at 919-20 (citing *Stone v. Powell*, 428 U.S. 465, 539-40 (1976))**.

Over a decade later, in ***Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185 (1995)**, the Supreme Court applied the good faith exception to the exclusionary rule when evidence was obtained pursuant to an invalid warrant where the error regarding the warrant's validity was made by court employees, rather than attributable to law enforcement personnel. Particularly, the arresting officer relied on a police record that showed the defendant had an outstanding arrest warrant. During the arrest, the officer discovered a bag of marijuana under the passenger's seat of the defendant's car. Although the defendant's warrant had previously been quashed, this information was not relayed to the officer at the time of the defendant's arrest. Mistakenly, the court employee informed the officer that the arrest warrant was still active. It was not until the court was notified of the defendant's arrest did they discover the warrant had been quashed and so advised the police. **Id. at 1188**. The defendant moved to suppress the evidence based on the argument that his arrest amounted to an unconstitutional search and seizure.

Applying the three factors it set forth in ***Leon***, the Supreme Court found the exclusionary rule was designed to "dete[r] police misconduct, not mistakes by

court employees." ***Id.* at 1193**. Further, there was no evidence that court employees ignored the Fourth Amendment; such errors were found to rarely occur among court personnel and the error committed by court personnel was immediately corrected once it was noticed. ***Id.* at 1193-94.** Finally, ***Evans*** found that court employees had no stake in the outcome of criminal prosecutions and therefore, the effect of excluding evidence would do little to deter similar future conduct. ***Id.*** As the Supreme Court also found no evidence that the officer, in relying upon the invalid warrant, was not being objectively reasonable, it was able to hold that the "[a]pplication of the ***Leon*** framework supports a categorical exception to the exclusionary rule for clerical errors of court employees." ***Id.*** The defendant's motion to suppress was denied.

**B.     Analysis**

In its Response, the Government points out that there is nothing precedential and on-point regarding whether the good faith exception to the exclusionary rule should apply when the error regarding the validity of the warrant is attributable to law enforcement personnel. Instead, the Government offers various cases from sister circuits to shed light on this legal issue. The Government notes that outside of the Seventh Circuit, the Fourth, Fifth and Eleventh Circuits have applied the good faith exception in instances when the error regarding the warrant was the result of law enforcement in the following cases: ***United States v. Herring*, 492 F.3d 1212 (11th Cir. 2007);** ***United States v. Castenada*, 273 F.3d 1094,**

2001 WL 1085086 (5th Cir. Aug. 29, 2001) (unpublished opinion) (followed precedent of *DeLeon-Reyna* in applying good faith exception); *United States v. Williams*, 149 F.3d 1172, 1998 WL 276460 (4th Cir. May 27, 1998) (unpublished opinion) (applying good faith exception finding that the officer's conduct was objectively reasonable in relying upon erroneous information provided by a different law enforcement agency that warrant for the defendant was still outstanding and application of exclusionary rule would have little deterrent effect except to possibly "create a situation in which officers could not do their duty without fear of censure"); *United States v. DeLeon-Reyna*, 930 F.2d 396 (5th Cir. 1991) (applying good faith exception to warrantless arrests where police officer errs but had good faith and objectively reasonable belief of valid authorization to make the arrest) (Doc. 18, p. 6).

Conversely, the Government states that the First, Second and Tenth Circuits appear to suggest they would not apply the good faith exception in light of law enforcement error causing an inaccurate warrant record in the following cases: *United States v. Gines-Perez*, 90 Fed. Appx. 3 (1st Cir. 2004) (unpublished opinion) (taking issue with district court interpreting *Evans* as extending good faith exception to when arresting officer relies on information revealed to be erroneous due to police error); *United States v. Santa*, 180 F.3d 20 (2d Cir. 1999) (finding that arresting officers reasonably relied on database record showing outstanding warrant later discovered to have been vacated, but that

**error was attributable to court employees, not law enforcement, and therefore applying good faith exception as categorically established in *Evans* was warranted );** *United States v. Shareef*, **100 F.3d 1491 (10th Cir. 1996) (agreeing with district court that exclusionary rule should apply when an error by dispatcher or law enforcement personnel leads to a Fourth Amendment violation, but finding no Fourth Amendment violation occurred against the defendants)** (Doc. 18, p. 6).

Examining these cases and also upon the Court's own review of relevant legal materials, it finds that the (published) opinion most aligned with the facts of the instant matter appears to be ***Unites States v. Herring*, 492 F.3d 1212 (11th Cir. 2007)**. In *Herring*, an investigator for the Coffee County Sheriff's Department saw the defendant and had reason to suspect that an outstanding warrant for his arrest existed, so the investigator asked the warrant clerk to check the county database. *Id.* **at 1214**. The database listed no active warrants for the defendant in Coffee County, Alabama. *Id.* The investigator asked the warrant clerk to check with the neighboring Sheriff's Department in Dale County, Alabama, to see if there were any outstanding warrants for the defendant. *Id.* Dale County reported an active warrant listed for the defendant's failure to appear on a felony charge. *Id.* Relying on this information, the Coffee County investigator pulled the defendant over and arrested him pursuant to the Dale County warrant. *Id.* The investigator searched both the defendant's person and truck, whereby he discovered some narcotics in the

defendant's pocket and a pistol under the front seat of his truck. *Id.* Meanwhile, the Dale County warrant clerk was unable to locate a copy of the actual warrant for the defendant, so she contacted the Dale County Clerk's Office and was informed that the warrant had previously been recalled. *Id.* The Dale County warrant clerk immediately contacted the Coffee County warrant clerk to relay this information, but the defendant had already been arrested and searched. The defendant was indicted on charges of possession of methamphetamine and for felony possession of a firearm. He moved to suppress the evidence, claiming that it was not incident to a lawful arrest because the arrest warrant had been rescinded, *Id.* The motion to suppress was denied by the district court and the defendant was convicted of both counts. ***Id.* at 1215**. He then appealed to the Eleventh Circuit. *Id.*

*Herring* followed what the Eleventh Circuit believed to be the guidance derived from the Supreme Court in *Leon*, finding that "the exclusionary rule should only be applied to a category of cases if it will 'result in appreciable deterrence.' " ***Id.* at 1216 (citations omitted)**. Following, the Eleventh Circuit summarized the three conditions warranting application of the exclusionary rule, as expressed in *Leon*: (1) misconduct by police or law enforcement adjuncts; (2) application of the exclusionary rule results in appreciable deterrence of such misconduct; and (3) the benefits of the rule's application must not outweigh its social costs. ***Id.* at 1217**. The *Herring* court, examining these three conditions, found that the conduct in question was at the very least, negligent: someone in the Sheriff's department failed

to note in the database that the defendant's arrest warrant had been recalled or rescinded. ***Id.* (assuming negligent actor as law enforcement adjunct)**. Second, it was believed that application of the exclusionary rule would "not deter bad record-keeping to any appreciable extent, if at all," as it was a negligent failure to act, not a *deliberate* choice *not* to act. ***Id.* at 1218 (emphasis added) ("Deterrents work best where the targeted conduct results from conscious decision making, because only if the decision maker considers the possible results of her actions can she be deterred.")**. Further, the appellate court found that there were already other "abundant incentives for keeping records current." *Id.* Also important was the fact that the exclusionary rule's sanction would be levied upon a police department that acted upon the invalid warrant – however, it was a different police department that actually made the negligent error regarding the warrant. *Id.* Thus, the benefits of applying the rule would be "marginal or nonexistent." Lastly, the Eleventh Circuit believed that the minimal deterrence gained from applying the exclusionary rule would be severely outweighed by the "cost of excluding otherwise admissible and highly probative evidence." *Id.* Therefore, the Eleventh Circuit affirmed the district court's denial of the defendant's motion to suppress evidence.[3]

---

[3] However, the appellate court did opine that if "faulty record-keeping were to become endemic," the officers in question may have a difficult time showing that their reliance on the warrant was "objectively reasonable," as "[t]he good faith exception to the exclusionary rule does not shelter evidence that was obtained in an unconstitutional arrest or search that was based on objectively unreliable information." *Herring*, 492 F.3d at 1219.

In the instant case, the Court finds that even if the "error" regarding the validity of Defendant's warrant was likely made by law enforcement personnel, it was personnel from a different law enforcement agency – it was not the agency that actually arrested Defendant, relying upon the faulty NCIC database entry. The facts also show this type of error rarely occurred and was corrected upon its discovery. Thus, the Court looks to whether application of the exclusionary rule would result in an appreciable deterrence of police error and whether the benefit of excluding the evidence would outweigh the costs to society. ***Herring***, **492 F.3d at 1217 (citing *Leon*, 468 U.S. at 909-10)**. The error by law enforcement, as in ***Herring***, arose out of negligent behavior rather than deliberate intent to ignore or subvert the Fourth Amendment. Further, the Government states that the "flawed" communication system between MEGSI and the St. Clair County Court has already been addressed and is no longer in use; a new system is in place where MEGSI enters all of their warrants from St. Clair County through the Illinois State Police.

The Court finds, therefore, that applying the exclusionary rule will not likely result in appreciable deterrence of this type of negligent behavior in law enforcement personnel. Certainly, its application will not create enough benefit to outweigh the costs in suppressing the evidence. It also finds that the arresting officer objectively and in good faith relied upon the inaccurate NCIC database information when arresting Defendant. In sum, the purpose of the exclusionary rule is to deter police misconduct. Its application in this case would not deter misconduct, only negligence, and the law enforcement agency that suffers would not be the agency that

committed the negligent act. As such, suppressing evidence would not serve to alter the behavior of the arresting officer – except to possibly make the officer less confident in the information relayed regarding any outstanding warrants, which, in turn, may make that officer less likely to do his or her job efficiently. For these reasons, the Court chooses to apply the good faith exception to this warrantless search and seizure.

### III. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Quash Arrest and Suppress Evidence (Doc. 12) is hereby **DENIED**. This case shall proceed to trial accordingly.

**IT IS SO ORDERED**.

Signed this 12th day of August, 2008.

/s/     *David R Herndon*

**Chief Judge**
**United States District Court**